**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| In re: | Case No. 22-51475-cag |
| 4th Avenue Apartments, LLC [1] | Chapter 11 |
| Debtor. | |

**DEBTOR'S EMERGENCY MOTION FOR ORDERS**
**(I) AUTHORIZING THE USE OF CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING**
**THE AUTOMATIC STAY, AND (IV) SCHEDULING A FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

    4th Avenue Apartments, LLC, the debtor and debtor in possession in the above captioned chapter 11 case (the "Debtor"), hereby files this *Emergency Motion for Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Motion"). In support of the Application, the Debtor submits the declaration of Samuel F. Sells (the "Sells Declaration"), attached as **Exhibit A** hereto, the Mortgage Note (the "Note"), attached as **Exhibit B** hereto, the Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Rent Assignment"), attached as **Exbibit C** hereto, and respectfully states as follows:

**JURISDICTION**

    1.    This Court has jurisdiction over this application pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1]    The last four digits of the Debtor's Employment Identification Number is 8487. The Debtor's mailing address is: 2115 Stephens Place, Suite 1100, New Braunfels, TX 78130.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief sought are sections 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code"), rules 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001 of the Local Rules for the United States Bankruptcy Court for the Western District of Texas (the "Local Rules").

## BACKGROUND

### A.      Case Background

4.      On December 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court").

5.      The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the removal of the Debtor as debtor in possession has been made in this chapter 11 case.

6.      The Debtor is a Texas limited liability company that was formed on February 3, 2021.  The Debtor's ownership is comprised of two classes: Class A and Class B.  Class A members consist of 31 individuals and 1 entity who collectively have an 85% equity stake in the Debtor.  The Class B shares are held as follows: Wild Mountain Holdings, LLC with a 14% stake and 5th Avenue Financial Group, Inc, with a 1% stake.

7.      The Debtor is a single-asset real estate entity that owns a multifamily apartment complex with 52 units.  On March 5, 2021, the Debtor purchased the Property.  On the same day, the Debtor entered into a real estate mortgage agreement (the "Mortgage") with IRock Loans, LLC (the "Lender") in the amount of $1,700,000.00 to purchase the property known as 4th Avenue Apartments (the "Property"), located at 2300 4th Avenue, Phenix City, Alabama 36867, Russell

2

County. The Lender holds a first lien mortgage and an assignment of rents on the Property. Based on the Debtor's review, the mortgage and assignment of rents are properly filed and perfected.

8. The Debtor is one of several sister companies that purchase and refurbish residential real estate as attractive investment opportunities for passive income. The Property and other sister properties are managed by Platinum Property Management, LLC, a Texas limited liability company ("PPM"). PPM collects rents from the Property.

9. The Property is a 52-unit garden-style apartment community built between 1950 and 1956 in Phenix City, Alabama, part of the Columbus, Georgia Metropolitan Statistical Area, and directly across the Chattahoochee River from Fort Benning. The Property comprises 13 buildings totaling 59,200 sq. ft. at an average of 1,138 sq. ft. per unit.

10. At the time of its purchase, the Property had been nearly abandoned and in total neglect. Of the 52 units, only 6 contained residents and only a handful of those were paying rents and many of the buildings had been condemned by the city. The Phenix City officials have been incredibly supportive of the Debtor's efforts, and the Debtor has created a community that provides clean, safe, and affordable housing. Now, the Property has a 65% occupancy rate.

11. Since its acquisition, the Debtor encountered problems with rehabilitating the Property which has prevented it from achieving its business plan. As a result, the Debtor has not been able to achieve the rental revenue it expected and the currently the rents are not sufficient to pay all the ordinary costs to maintain the property and the mortgage payments. Most recently, the Lender has posted the property for foreclosure within Russell County, Alabama set for December 29, 2022.

12. On or about December 21, 2022, the Debtor engaged in a new capital raise from its existing equity owner to raise the capital necessary to file, confirm, and implement a successful

chapter 11 plan. The Debtor raised $300,000 in new cash and received commitments for an additional $300,000. The Debtor will use this fund to implement a chapter 11 plan including make a payment to the Lender and pay capital expenditures to complete the rehabilitation of the Property and also pay holding costs for the Property.

13.     Additional information about the Debtor's business and affairs, prepetition indebtedness, and the events leading up to the Petition Date can be found in the *Declaration of Samuel F. Sells in Support of the Debtor's Voluntary Petition and First Day Motions* [Dkt. No. 3], which is incorporated herein by reference.

**B.      Necessity for Requested Relief**

14.     The Debtor generates cash collateral (the "Cash Collateral") from the operation of its business when it collects rents from its tenants. The Debtor must obtain approval for the use of the Cash Collateral and the Debtor to have access to its cash to continue to operate in the ordinary course of business and to pay normal operating expenses. The Debtor has requested from the Lender its consent to rents from the Property, but the Lender has refused.

15.     The Debtor will need to use its Cash Collateral to meet its ongoing post-petition obligations. In order to continue operations as normal and to preserve the value of the estate pending confirmation of a plan of reorganization, the Debtor needs immediate authority to use the Cash Collateral.

16.     The Debtors will provide adequate protection to the Lender as follows: (i) providing a replacement lien on existing collateral, (ii) continuing to make interest payments at the contract

rate[2] and (iii) compliance with a cash collateral budget, and (iv) continuing to pay costs to preserve and enhance the value of the Property.

17.     Furthermore, the Debtor intends to have all PPM deposit all of its rental payments received from the Property into a separate debtor in possession account.

18.     Lastly, the Debtor requests that the Court grant the Lender senior secured, superpriority replacement liens on the Property and its rental income.

### C.     Alabama Law in Relation to Assignment of Rents

19.     Courts look to state law to determine debtors' interests in property. *Butner v. United States,* 440 U.S. 48, 54–55 (1979). Under Alabama state law[3], the proper effect of an assignment of rents clause must be gleaned from the intent of the parties as exhibited in the language of the clause itself. *In re Turtle Creek, LTD.,* 194 B.R. 267, 278-79 (Bankr. N.D. Ala. 1996) ("a close reading of the mortgage indicates that the assignment of rents was intended only as security for the debt. Paragraph one of the mortgage provides that it was given for the purpose of securing the prompt payment of the indebtedness . . . Further, the assignment of rents provision

---

[2]     This satisfies the requirement in Section 362(d)(3)(B)(ii), which states the following: "[w]ith respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the debtor has commenced monthly payments that: may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate." Under the Note, the interest rate is 10.00%. *See* Note, pp. 1.

[3]     Section 12 of the Rent Assignment states that the document is governed "by the laws of the Property Jurisdiction without giving effect to any choice of law provisions thereof that would result in the application of the laws of another jurisdiction." Per Section 1 of the Rent Assignment, "Property Jurisdiction" means the jurisdiction in which the Land is located. Because the Property is in Phenix City, Alabama, Alabama law governs the Rent Assignment.

specifically provided that the assignment was given for the purpose of discharging the debt hereby secured"). However, courts have found that certain language can constitute an absolute assignment. *See e.g., Homecorp v. Secor Bank,* 659 So.2d 15 (Ala. 1995) (Alabama Supreme Court found that he assignment of rents was absolute based on the explicit language under the mortgage documents: "The assignment of the rents . . . of the Mortgaged Property in this Article II is intended to be an absolute assignment from the Mortgagor to the Mortgagee and not merely the passing of a security interest."). *See also In re McCombs*, No. 11-01293-MAM-11, 2011 WL 4458893, at *3 (Bankr. S.D. Ala. Sept. 23, 2011) (court found that contracted language could only show intent to be an absolute assignment).

20.     In the above-referenced case, Section 3(a) of Rent Assignment contains language with a specific mention that the assignment of rents is not just for security.

> As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Only for purposes of giving effect to these absolute assignments of Leases and Rents, and for no other purpose, the Leases and Rents shall not be deemed to be a part of the Mortgaged Property. However, if these present, absolute and unconditional assignments of Leases and Rents are not enforceable by their terms under the laws of the Property Jurisdiction, then each of the Leases and Rents shall be included as part of the Mortgaged Property, and it is the intention of Borrower, in such circumstance, that this Security Instrument create and perfect a lien on each of the Leases and Rents in favor of Lender, which liens shall be effective as of the date of this Security Instrument.

Rent Assignment, Section 3(a).

21.     However, a further reading allows for the Debtor a license to collect and receive all rents:

> Until an Event of Default has occurred and is continuing, but subject to the limitations set forth in the Loan Documents, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, subject to the limitations set forth in the Loan Documents), and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay the Monthly Debt Service Payments and the other amounts then due and payable under the other Loan Documents, including Imposition Deposits, and to pay the current costs and expenses of managing, operating and maintaining the Mortgaged Property, including utilities and Impositions (to the extent not included in Imposition Deposits), tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing (and no event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default has occurred and is continuing), the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower free and clear of, and released from, Lender's rights with respect to Rents under this Security Instrument.

Rent Agreement Section 3(b).

22.     While the *Homecorp* court found that the mortgagor had made an absolute assignment of rents to the lender, other courts have found that taking the agreement as a whole, and not just specific provisions, shows an intent by the parties for rental income to be used as collateral.  *See e.g. In re Buttermilk Towne Center, LLC*, 442 B.R. 558 (B.A.P. 6th Cir. 2010) (detailing cases from various jurisdictions addressing the issue). In determining whether an assignment of rents was absolute or collateral, those courts considered the substance of the clause as a whole to give effect to the parties' intent, rather than taking isolated statements as dispositive. As stated by the *Buttermilk Towne Center LLC* court, "While isolated portions of the assignment may appear absolute, when read in the context of the entire document, it is clear that the assignment

was intended to serve as additional security only." *Id.* at 564. *See also Andrews v. RBL, L.L.C. (In re Vista Bella, Inc.)*, No. 11-00149-MAM-7, 2013 WL 4051031, at *7 (Bankr. S.D. Ala. Aug. 9, 2013) ("Since that time, this court has had occasion to revisit the *McCombs* holding (in a few oral rulings) and has decided that the better result is that an 'absolute assignment,' which carries all of the hallmarks of being assigned for security purposes only, does not divest a debtor of all property interest in the absolutely assigned property").

23.     It is clear that the Debtor and the Lender intended the rents be used as security for payment on the underlying mortgage.  At the very least, even if the language of the Rent Assignment is an absolute assignment, the Court should adopt the trends, as stated under *Vista Bella* and *Buttermilk Towne Center LLC*, that the Debtor is not divested of an interest in the rent and thus, should be granted its use under Section 363.

## **RELIEF REQUESTED**

24.     The Debtor requests that the Court enter an order substantially in the form of the proposed order attached hereto (the "Proposed Order") authorizing the Debtor to use Cash Collateral in the ordinary course of its business and on an interim basis and on a final basis after a final hearing on this Motion.

## **BASIS FOR RELIEF**

25.     Under section 363(c)(2) of the Bankruptcy Code, the Debtor may not use Cash Collateral without the Lender's consent.  If no consent is given by the Lender, then section 363(e) allows the Court to grant the Debtor authority to use Cash Collateral upon the provision of adequate protection to the Lender.

26.     Debtor requires the continued authority to use Cash Collateral on an interim period pursuant to the cash collateral budget.   Upon entry of a final order, the Debtor intends to use Cash

Collateral through the effective date of confirmation of a plan of reorganization and give the Lender the same adequate protection that is contemplated that will be provided in the interim order.

27.     Debtor also requests that this Court schedule a hearing for final approval on the use of Cash Collateral, on notice to creditors and parties in interest.

28.     The immediate and temporary approval for the use of the Cash Collateral is consistent with (i) Bankruptcy Code requirements for maintaining the going concern of a debtor's business operations; (ii) the law under sections 361 and 363 of the Bankruptcy Code as to the use of cash collateral and adequate protection; and (iii) facilitating a successful reorganization under chapter 11 of the Bankruptcy Code.

29.     The failure to authorize the immediate use of Cash Collateral will result in the Debtor's not having the sufficient funds to run its business and this chapter 11 case will fail.

30.     The Bankruptcy Code contemplates a debtor's use of collateral during the reorganization of its business. Sections 102(1) and 363 of the Bankruptcy Code provide that collateral may be used upon notice and opportunity for a hearing appropriate in the particular circumstances. Relief may be authorized without an actual hearing if there is insufficient time available and adequate protection has been provided. 11 U.S.C. § 363(e). The combination of Debtor's emergency needs to satisfy pending obligations and current operating needs, together with the provision of the adequate protection the Debtor is offering to the Lender is more than sufficient to authorize the use of the Cash collateral as set forth herein.

31.     Debtor requests permission to pay its usual and customary operating expenses of the same type and approximate amounts set forth on its budget.

## CONCLUSION

WHEREFORE, the Debtor requests that the Court authorize the use of Cash Collateral on an interim basis and, upon setting and conducting a final hearing, issue a final order authorizing the use of cash collateral with the adequate protection to the Lender as set forth herein, and grant any other and further relief to which Debtor is entitled.

Respectfully submitted this 29th day of December, 2022

**PARKINS & RUBIO LLP**

*/s   Charles M. Rubio*
Lenard M. Parkins
TX Bar No. 15518200
Charles M. Rubio
TX Bar No. 24083768
Matthew W. Bourda
TX Bar No. 24091948
700 Milam Street, Suite 1300
Houston, TX 77002
Phone: (713) 715-1660
Fax:    (713) 715-1669
Email: lparkins@parkinsrubio.com
          crubio@parkinsrubio.com
          mbourda@parkinsrubio.com

**PROPOSED COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

|  |  |
|---|---|
| In re: | Case No. 22-51475-cag |
| 4th Avenue Apartments, LLC [1] | Chapter 11 |
| Debtor. |  |

**INTERIM ORDER GRANTING THE DEBTOR'S USE OF**
**CASH COLLATERAL AND MODIFYING THE AUTOMATIC STAY**

Upon the motion (the "Motion")[2] filed by the Debtor, as more fully set forth in the Motion

and all exhibits and attachments thereto; following a hearing held by the Court on

_____, 2022, and upon consideration of the Court's finding that (i) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1334; (ii) this is a core proceeding pursuant

to 28 U.S.C. § 157(b); (iii) venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

---

[1]  The last four digits of the Debtor's Employment Identification Number is 8487.  The Debtor's mailing
address is: 2115 Stephens Place, Suite 1100, New Braunfels, TX 78130.

[2]  Capitalized terms not defined herein have the meaning set forth in the Motion.

(iv) the Motion is in compliance with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and Orders and procedures of this Court; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.     The Debtor shall be authorized to use the funds in its possession to pay its usual and necessary expenses as set forth within the Budget pending the final hearing. The Debtor may exceed the operating expense line item and any other non-operating expense line item by 10%. Any unused amounts in the budget will roll forward and be available in future periods.

2.     The Debtor shall prepare a budget-to-actuals report by the 20th day after the end of each month.

3.     The Debtor shall maintain insurance for the Property.

4.     As adequate protection, the Debtor is hereby ordered and directed to make monthly interest payments to the Lender as adequate protection, at the contracted rate under the Note, which is 10.00% of the mortgaged amount, for a monthly payment of $14,168.00.

5.     All rents are to be deposited by the Debtor into a debtor in possession account set up by the Debtor.

6.     The Debtor shall file a proposed final order and budget under notice cover sheet by _____, 2023.

7.     Any objections to the final cash collateral order shall be filed by _____, 2023.

8.     The Court shall conduct a final hearing on _____, 2023 at _____ by Webex. The Debtor shall be responsible for notice.

9.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Submitted by:


**PARKINS & RUBIO LLP**

Lenard M. Parkins
TX Bar No. 15518200
Charles M. Rubio
TX Bar No. 24083768
Matthew W. Bourda
TX Bar No. 24091948
700 Milam Street, Suite 1300
Houston, TX 77002
Phone: (713) 715-1660
Fax:    (713) 715-1669
Email: lparkins@parkinsrubio.com
         crubio@parkinsrubio.com
         mbourda@parkinsrubio.com

**PROPOSED COUNSEL TO THE DEBTOR**
**AND DEBTOR IN POSSESSION**